RENDERED: JULY 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0701-ME

K.W.                                                                          APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE ANGELA JOHNSON, JUDGE
ACTION NO. 24-AD-500232

CABINET FOR HEALTH AND
FAMILY SERVICES; K.L.W., A
MINOR CHILD; AND V.B-G.                                          APPELLEES

AND

NO. 2025-CA-0703-ME

K.W.                                                                          APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE ANGELA JOHNSON, JUDGE
ACTION NO. 24-AD-500234

CABINET FOR HEALTH AND
FAMILY SERVICES; K.S.W., A
MINOR CHILD; AND V.B-G.                                          APPELLEES

AND

NO. 2025-CA-0704-ME

K.W.                                                          APPELLANT

                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                            FAMILY COURT DIVISION
                        HONORABLE ANGELA JOHNSON, JUDGE
                            ACTION NO. 24-AD-500233


CABINET FOR HEALTH AND
FAMILY SERVICES; K.M.W., A
MINOR CHILD; AND V.B-G.                                       APPELLEES



                                OPINION
                               AFFIRMING

                            ** ** ** ** **

BEFORE:  KAREM, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  K.W. (Father) appeals the Jefferson Family Court's May 12,

2025, Findings of Fact and Conclusions of Law and Judgments terminating his

parental rights to his children, K.L.W., K.S.W., and K.M.W. (the Children).

K.L.W. was born in 2016, K.S.W. was born in 2018, and K.M.W. was born in

2017.  There is also a fourth sibling (Sister), born in 2015, involved in the

underlying matters; however, Father was adjudicated to not be her biological father, and so she is not subject to this consolidated appeal.

Father's counsel commenced this consolidated appeal on his behalf, filing a brief pursuant to *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012) and *Anders v. California*, 386 U.S. 738 (1967). The *Anders* brief concedes that there are no meritorious or nonfrivolous issues that could be raised on appeal. Counsel also filed a motion to withdraw which we have granted by separate Order, as all requirements of *A.C.*, 362 S.W.3d 361, and *Anders*, 386 U.S. 738 have been met. Father also filed a supplemental *pro se* brief as afforded under *A.C.*, 362 S.W.3d at 371, which this Court has reviewed. And, the Cabinet for Health and Family Services (the Cabinet) has filed a responsive brief.

After a careful review of the record on appeal, the relevant law, and the briefs filed with this Court, we affirm.

### BACKGROUND

In April 2022, the Cabinet filed dependency, neglect, and abuse (DNA) petitions against Father and V.B-G. (Mother)[1] after Mother and the Children were involved in an automobile accident in which the Children sustained

---

[1] Mother is named as an Appellee but has not filed a brief nor has she actively participated in these appeals or the underlying termination of parental rights actions.

some injuries. None of the Children, despite all three being under seven years of age, had been using appropriate safety restraints in Mother's vehicle. Upon further investigation, the Cabinet discovered that one of the Children had untreated burn injuries he had sustained before the automobile accident, and that the Children had been left in the care of Sister, who was only seven years of age, while Mother was not present in the home. At the time of the automobile accident, Father was enrolled in Kentucky's Home Incarceration Program (HIP) as the result of some pending criminal charges. Father's criminal case concerned an incident of domestic violence which occurred between him and Mother in 2019.

The family court awarded emergency and temporary custody to the Cabinet, and the Children were soon thereafter placed into foster care with T.W. (Foster Mother). The Cabinet constructed case plans for the parents; in particular, Father's plan included obtaining a psychological and parenting evaluation. He was further required to complete a Batterer's Intervention Program (BIP), maintain stable housing and employment, and follow the court conditions of his criminal case. Father was also required to complete a hair follicle drug screen and a substance abuse assessment if Father's drug screen tested positive. Initially, Father was permitted to have video calls with the Children and Sister, but the Cabinet ceased those visits in the late summer of 2022, based on concerns that Father was

having inappropriate conversations with the Children about the pending DNA cases and was disparaging Mother.

Over the course of the one and half years after the DNA cases commenced, Father remained on HIP and obtained a work release for a job in which he worked approximately seventy-five hours a week. Father was not able to complete multiple portions of his case plan during this time. In January of 2024, in his pending criminal case, Father pleaded guilty to rape first degree, sodomy first degree, assault second degree, strangulation first degree, unlawful imprisonment first degree, and possession of a firearm by a convicted felon. He was also required to register as a sex offender. As a result of his guilty plea, Father stipulated to a risk of abuse or neglect in the DNA cases. Father was then ultimately sentenced in March of 2024 to fourteen years in prison.

In July of 2024, the Cabinet filed petitions for the termination of parental rights for the Children. The family court conducted a hearing on February 21, 2025, in which Foster Mother, the supervising Cabinet worker for the family's DNA cases, and Father were the only witnesses; Mother did not appear.

Foster Mother testified that the Children had been in her care for the previous three years, essentially since the Cabinet filed the original DNA petitions in 2022. She testified that the Children had never received immunizations, dental care, or regular medical care prior to being placed with her. Foster Mother

believed the Children were doing well in her care and had made good progress with their schooling.

The Cabinet worker testified at length about the Cabinet's concerns surrounding Father's lack of progress on his case plan. She verified that Father had expressed difficulties in obtaining releases from his HIP, but that the Cabinet offered some virtual alternatives for BIP classes and an alternative parenting program.[2] She also indicated Father had missed multiple appointments for a psychological assessment. The Cabinet worker testified that she continued to maintain contact with Father after he received his criminal sentence and that she was attempting to work with his institution to see what services were available to Father while incarcerated. At the time of the hearing, the Cabinet worker had not received any certificates of completion for any programs or classes Father had engaged in while incarcerated.

Father acknowledged that he had not been able to complete several components of his case plan, but stated it was because the court presiding over his criminal case would not approve his requests for releases. He identified one motion for release to obtain hair follicle testing that was denied in 2022, but claimed the other requests that were denied were oral motions made by his counsel

---

[2] Father was able to complete a parenting assessment in 2022, however that organization would not allow Father to enroll in a parenting program until his criminal case was resolved.

in the criminal case. He further acknowledged the opportunity to attend virtual BIP classes offered by the Cabinet but testified that he was working too many hours to complete a virtual class. He also admitted to not having provided any care or financial support for the Children since the beginning of the DNA cases. Though Father admitted to stipulating to a risk of abuse and neglect in the DNA cases, he believed he had never actually neglected or abused the Children. When specifically addressing the 2019 domestic violence incident with Mother that had resulted in his incarceration, Father stated it was an "unfortunate mishap" that, in his opinion, should not lead to the termination of his parental rights.

The family court took the matter under submission, and on May 12, 2025, issued its Findings of Fact and Conclusions of Law, and Judgments terminating the parental rights for both Mother and Father. This appeal followed.

## STANDARD OF REVIEW

In Kentucky, the applicable standard of appellate review of findings of fact made by a family court in a termination of parental rights proceeding is the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. Therein, the family court's findings of fact will not be set aside if supported by substantial evidence. *M.L.C. v. Cabinet for Health and Family Servs.*, 411 S.W.3d 761, 765 (Ky. App. 2013) (citations omitted). Substantial evidence is evidence of a probative value that a reasonable person would accept as adequate to

-7-

support a conclusion. *Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003). And, any questions of law raised on appeal will be reviewed *de novo*. *Commonwealth, Cabinet for Health and Family Servs. v. S.H.*, 476 S.W.3d 254, 258 (Ky. 2015).

Additionally, in appeals where *A.C.* and *Anders*, are applicable, this Court "independently review[s] the record and ascertain[s] whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372 (citing *Anders*, 386 U.S. at 744). This review is tantamount to palpable error review. *Id.* at 370. "Fundamentally, a palpable error determination turns on whether the court believes there is a 'substantial possibility' that the result would have been different without the error." *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (citation omitted). Our review proceeds accordingly.

## ANALYSIS

Parental rights may be involuntarily terminated after three determinations are made: (1) the child is "[a]bused or neglected" as defined by Kentucky Revised Statutes (KRS) 600.020(1); (2) the termination must be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists. KRS 625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014). Our jurisprudence is clear that while a family court may find multiple parental unfitness factors to exist, KRS

625.090(2) requires only one factor be found to exist. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019).

In this case, the family court made detailed findings of fact. Therein, the court found, by clear and convincing evidence, that the Children had been abused or neglected, as evidenced by the findings in the underlying DNA cases. The court concluded that the termination of Father's parental rights would be in the Children's best interests, explicitly considering each factor relating to each child's best interests enumerated in KRS 625.090(3). Regarding Father, the family court further found that three grounds of parental unfitness existed, namely KRS 625.090(2)(e), (g), and (j).[3] Though the Cabinet raised the argument that both

---

[3] Kentucky Revised Statutes (KRS) 625.090(2) provides in relevant part:

> No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:
>
> . . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> . . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and

parents had also abandoned the Children for a period of more than ninety (90) days under KRS 625.090(2)(a), the family court did not find this factor to exist for Father, determining that his incarceration alone should not be held against him. *See J.H. v. Cabinet for Human Resources*, 704 S.W.2d, 661, 663 (Ky. App. 1985).

As concerns KRS 625.090(2)(j), we observe that the Children were in the Cabinet's custody for approximately twenty-seven (27) months before the Cabinet filed the termination petitions; this is apparent from the record on appeal and remains uncontroverted by Father. Thus, the family court's finding of the Father's unfitness under KRS 625.090(2)(j) is supported by clear and convincing evidence, and therefore it is unnecessary to address the remaining parental unfitness factors found by the family court. *See Cabinet for Health & Fam. Servs. v. H.L.O.*, 621 S.W.3d 452, 462-63 (Ky. 2021); *see also C.J.*, 572 S.W.3d at 496.

To the extent that Father argues his inability to complete his case plan was directly related to his HIP requirements, we are unpersuaded. The Cabinet

---

available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

. . . .

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]

attempted to work with Father and provide him alternatives to accomplish the goals on his case plan – alternatives to which Father did not avail himself. While we recognize the extra hurdles in place as the result of the terms of Father's HIP, completing his case plan was not such an impossible or herculean task as Father suggests. By Father's own admission, he did not have time to do virtual BIP classes as requested by the Cabinet. Father failed to recognize the gravity of his actions, and their effects upon the Children, including the crimes perpetrated against Mother. While the family court acknowledged that Father appeared to have engaged in some services after beginning his institutional incarceration, the court also recognized the preceding months of Father's noncompliance with the case plan, coupled with his pending fourteen years of incarceration, which established Father's inability to provide for his children the material necessities of life. Clearly, there was no reasonable expectation of improvement in the foreseeable future. What efforts Father may have made to comply with his case plan "were too little and too late." *A.F. v. L.B.*, 572 S.W.3d 64, 75 (Ky. App. 2019).

CONCLUSION

After a thorough review of the record on appeal, relevant law, and the briefs filed, we conclude that the family court made all of the statutorily necessary findings, which were supported by substantial evidence. The findings were not

-11-

clearly erroneous. There being no error in the family court's decision, we affirm the May 12, 2025, Findings of Fact and Conclusions of Law, and Judgments terminating Father's parental rights.

ALL CONCUR.

*ANDERS* BRIEF FOR APPELLANT:

Bethanni Forbush-Moss
Louisville, Kentucky

APPELLANT SUPPLEMENTAL
BRIEF:

K.W., *Pro Se*
Sandy Hook, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky